UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALVARO BALLEN-RAMIREZ
(A# 220-745-938),

Petitioner,

v.

WARDEN OF THE GOLDEN STATE
ANNEX DETENTION FACILITY, et al.,

Respondents.

No.  1:26-cv-2971 DAD AC

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee proceeding with a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241.  This action was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

FACTUAL BACKGROUND

Petitioner, a noncitizen who entered the United States on or around January 13, 2022, was issued a Notice to Appear ("NTA") and released on recognizance.  ECF No. 8 at 9 (Form I-213), 31 (Form I-220A, Order of Release on Recognizance).  Petitioner applied for asylum.  ECF No. 1 at 5; ECF No. 8 at 9 (Form I-213).

On August 25, 2025, petitioner was arrested in Sacramento County for assault with a deadly weapon in violation of California Penal Code § 245(A)(1).  ECF No. 8 at 9 (Form I-213), 17 (Interstate Identification Index Response).  On February 3, 2026, petitioner was convicted of a

1

lesser charge, a misdemeanor under California Penal Code § 242 for simple battery, and sentenced to one year probation and sixty days in jail. Id. at 17-18.

On March 17, 2026, Immigration and Custom Enforcement ("ICE") and Enforcement of Removal Operations ("ERO") officers located and arrested petitioner in Carmichael, California, and took him into ICE custody. Id. at 9. Petitioner has not received a hearing regarding his re-detention and remains in ICE custody at Golden State Annex;[1] he seeks immediate release or a bond hearing. ECF No. 1 at 2, 6.

PROCEDURAL BACKGROUND

On April 20, 2026, petitioner filed a pro se petition for writ of habeas corpus, along with motions to proceed informa pauperis and to appoint counsel. ECF Nos. 1-3. On April 27, 2026, the undersigned issued a minute order granting the motion to proceed in forma pauperis, construing the petition as a petition for writ of habeas corpus and motion for preliminary injunction, and liberally construing the petition and motion to assert two separate due process claims: (1) based on prolonged detention, and (2) based on revocation of release. ECF No. 7. The parties were informed that the undersigned intended to issue findings and recommendations directly on the claims raised in the petition and motion for preliminary injunctive relief, and that any arguments made and exhibits submitted in support of the motion for preliminary injunctive relief would be considered. Id. Respondents were ordered to file an opposition to the motion for preliminary injunction on or before April 30, 2026, substantively addressing whether there are any factual or legal issues that materially distinguish this case from the court's prior orders in Ayala Cajina v. Wofford, No. 1:25-cv-1566 DAD AC (HC), 2025 WL 3251083 (E.D. Cal. Nov. 21, 2025), Mejia Parada v. Chestnut, No. 1:26-cv-1564 DAD JDP, 2026 WL 555479 (E.D. Cal. Feb. 27, 2026), Vilcape Garate v. Chestnut, No. 1:26-cv-1472 DAD SCR, 2026 WL 524661 (E.D. Cal. Feb. 25, 2026), Glavis v. Noem, No. 1:26-cv-0957 DAD AC (HC), 2026 WL 330608 (E.D.

---

[1] The ICE Inmate Locator website, operated by the Department of Homeland Security, confirms petitioner remains in custody at Golden State Annex as of the date of this order. See Fed. R. Evid. 201 (court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned).

Cal. Feb. 6, 2026).  Id.  Petitioner was provided until May 7, 2026, to file a reply, if any.  Id.

Respondents filed an opposition to the petition for writ of habeas corpus and motion for preliminary injunction.  ECF No. 8.  Petitioner has not filed a reply.

LEGAL STANDARD

The Constitution guarantees the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  The writ of habeas corpus extends to a prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States."  8 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001) (citation omitted), superseded by statute on other grounds, Nasrallah v. Barr, 590 U.S. 573580 (2020).   "District courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order[.]"  Lopez-Marroquin v. Barr, 955 F.3d 759 (9th Cir. 2020) (citation omitted); see also Zadvydas, 533 U.S. at 688 ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

DISCUSSION[2]

A.  Overview

Respondents' response to the petition and motion for preliminary injunction is unclear. First, respondents assert that "aside from the facts and circumstances of Petitioner's detention, and . . . arrest . . . and eventual conviction . . . there does not appear to be substantive differences between this case and the cases cited in the minute order."  ECF No. 8 at 1.  Then they assert that "[n]evertheless, for the reasons below, all requested relief should be denied."  Id.  As a result, it is

---

[2]  Because the undersigned recommends the petition be granted on petitioner's revocation of release claim, the undersigned declines to address petitioner's prolonged detention claim.

3

unclear whether respondents mean to take the position that (1) the facts and circumstances of petitioner's detention, arrest, and conviction constitute substantial differences that materially distinguish this case from Ayala Cajina, Mejia Parada, Vilcape Garate, and Glavis, supra, and/or (2) that even if petitioner's facts, circumstances, arrest and conviction are not materially distinguishable, the court should nonetheless deny the petition because "[p]etitioner is an 'applicant for admission' who is subject to mandatory detention" under 8 U.S.C. § 1225(b)(2) and does not possess due process rights beyond those afforded by Congress.  See id. at 2-3.  Accordingly, both arguments are discussed below.

B.  No Substantial and/or Material Factual or Legal Distinction

To the extent respondents argue that petitioner's facts, arrest, charge and criminal conviction distinguishes his case from Ayala Cajina or any of the other cases cited by the court, the undersigned rejects this argument for two reasons.

First, respondents fail to explain how and why petitioner's facts, arrest, charge and criminal conviction warrant a different outcome than that reached in Ayala Cajina or any of the other case cited.  See Gutierrez v. Warden of Golden State Annex Det. Facility, No. 1:26-cv-01888-DAD-AC, 2026 WL 891625, at *2 (E.D. Cal. Apr. 1, 2026) (rejecting the respondents' attempt to distinguish Ayala Cajina on the basis of ATD violations where the respondents failed to provide any argument as to why those violations compelled a different result).

Second, the differences identified are not substantial and/or material.  In Ayala Cajina, the petitioner was detained upon entering the United States, released on own recognizance, and subsequently re-detained by ICE allegedly due to pending criminal charges.  Ayala Cajina, 2025 WL 3251083, at *1.  Despite petitioner's pending charges, this court granted petitioner's temporary restraining order and ordered him released.  Id. at *5.  The court concluded "petitioner will likely succeed on the merits of his procedural due process claim that his re-detention without pre-detention hearing before a neutral adjudicator was unlawful."  Id. at *5.  In reaching this conclusion and outcome, petitioner's arrest and/or pending criminal charges were of no consequence.  Id.; see also Tinoco v. Noem, ___ F. Supp. 3d ____, 2025 WL 3567862, (E.D. Cal. Dec. 14, 2025) (granting temporary restraining order, ordering immediate release of petitioner,

who had been previously released on recognizance, and enjoining respondents from re-detaining petitioner absent a pre-detention hearing, despite petitioner's arrest for driving under the influence and subsequent conviction for wet reckless driving).  Instead, the focus and determining considerations in Ayala Cajina were the liberty interest created upon petitioner's conditional release from civil detention (an "implicit promise"), petitioner's strong interest in remaining out of custody strengthened by the duration of his release, the high risk of erroneous deprivation in re-detention without a pre-deprivation hearing before a neutral adjudicator, and the negligible government interest in re-detaining petitioner without providing him such process.  Ayala Cajina, 2025 WL 3251083, at *3 (alteration in original) (citations omitted) ("[E]ven when an initial decision to detain or release an individual is discretionary, the government's subsequent release of the individual from custody creates 'an implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release."), *3-5.

Similarly, here, petitioner's conditional release in January 2022 created a liberty interest based on "an implicit promise" that he would not be re-detained (for civil detention purposes) unless he violated the terms of his release.  Petitioner's criminal conviction did not alter his liberty interest, the strength of his private interest based on his three years of release on recognizance, the high risk of erroneous deprivation absent pre-deprivation procedures, and the negligible government interest in re-detaining without these pre-deprivation procedures.

Because petitioner's criminal conviction did not alter his liberty interest or any other part of the due process analysis, the case is also materially indistinguishable from Mejia Parada, Vilcape Garate, and Glavis—cases in which petitioners challenged the revocation of their release but did not have any criminal history.  See Mejia Parada, 2026 WL 555479, at *1 (granting petition for writ of habeas corpus because "[d]ue process require[s] a pre-detention hearing to protect the petitioner's liberty interest in his continued release on parole," and no such process was provided); Vilcape Garate, 2026 WL 524661, at *1 (granting petition for writ of habeas corpus because due process requires a pre-detention hearing to protect petitioner's liberty interest in his continued release on recognizance and no such process was provided); Glavis, 2026 WL 330608, at *1 (same).

5

Accordingly, the undersigned finds there is no material distinction between this case and Ayala Cajina, Mejia Parada, Vilcape Garate, and Glavis, and the same outcome is therefore warranted.

C. Even if Materially Distinguishable, Petitioner is Not Subject to Mandatory Detention and Has Constitutionally Protected Due Process Rights under the Fifth Amendment

Respondents argue that even if this case is materially indistinguishable from Ayala Cajina and the other cases cited by this court, the court should deny the petition because: (1) petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2); (2) the United States Supreme Court in Department of Homeland Security v. Thuraissigiam, 591 U.S. 103, 138-40 (2020) held that an "applicant for admission" "has only those rights regarding admission that Congress has provided by statute"; and (3) as an "arriving alien" whose conditional release was terminated based on an encounter with law enforcement, petitioner does not have a liberty interest in remaining out of custody. ECF No. 8 at 2-3. As discussed below, the undersigned disagrees with each argument.

1. Petitioner is an "applicant for admission" but he is *not* subject to mandatory detention under 8 U.S.C. § 1225(b)(2).

Respondents' first argument—that petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)—has been tried, tested and overwhelmingly rejected by this court, hundreds of district courts throughout the United States, and four federal circuit courts. Lopez-Campos v. Raycraft, Nos. 25-1965/1969/1978/1982, ___ F.4th ____, 2026 WL 1283891, at *3 (6th Cir. May 11, 2026) ("join[ing] the Second and Eleventh Circuit's and Judge Lee's individual opinion in Castañon-Nava, in holding that § 1225(b)(2) does not apply to noncitizens" who have lived in the United States for years); Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami, No. 25-14065, ___ F.4th ____, 2026 WL 1243395 (11th Cir. May 6, 2026); Castañon-Nava v. U.S. Dep't of Homeland Sec., No. 25-3050, ___ F.4th ____, 2026 WL 1223250 (7th Cir. May 5, 2026) (Lee, J.) (finding that § 1225(b)(2)(A) applies to 'applicants for admission' who are *seeking* lawful entry at the border or ports of entry and not to noncitizens unlawfully living in the country's interior"); Barbosa da Cunha v. Freden, No. 25-3141, ___ F.4th

____, 2026 WL 1146044, at *6 (2d Cir. Apr. 28, 2026) (agreeing with over "370 district judges across the Nation who (as of mid-February 2026) have . . . rejected the government's position" that 8 U.S.C. § 1225(b)(2) applies to noncitizens who have been living in the United States for years and are arrested within the interior); Sharma v. Warden of Golden State Annex, No. 1:25-cv-1861 AC, 2026 WL 1162718, at *4 (E.D. Cal. Apr. 29, 2026) (emphasis in original) (collecting cases) ("[C]ourts, including this court, have also repeatedly and overwhelmingly concluded that when a noncitizen is detained within the *interior* of the United States, the appropriate detention statute is 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b)."); but see Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026); Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026).

Recently, in a split decision by the Eleventh Circuit, the court concluded that only certain types of "applicants for admission" (defined as a noncitizen present without admission or who arrives in the United States) fall within the scope of 8 U.S.C. § 1225(b)(2). Hernandez Alvarez, 2026 WL 1243395; 8 U.S.C. § 1225(a)(1) (definition of "applicant for admission"). The Eleventh Circuit explained that "[w]hen confronted with a question of statutory interpretation," the court looks to "(first and foremost) the text, then to broader statutory structure, history, and, if necessary, to the congressional purpose of the [Immigration and Nationality Act ("INA")] as amended by [the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA"), Pub. L. 104-208, 110 Stat. 3009]." In doing so, the court concluded that

> Putting the pieces together, the plain text of § 1225(b)(2)(A), as supplemented by the definitions chosen by Congress in the INA, yields this command: an alien shall be detained for a § 1229a proceeding if he (1) is arriving in the United States or is present in the United States without having been granted lawful entry [("applicant for admission")]; (2) is *seeking* lawful entry after inspection and authorization by an immigration officer; and (3) is not clearly and beyond a doubt entitled to lawful entry, as determined by the examining immigration officer. See id. § 1225(b)(2)(A).

Id. at *8. The Eleventh Circuit's ruling is consistent with the Second and Sixth Circuit's recent rulings in Barbosa da Cunha and Lopez-Campos, and Judge Lee's opinion in Castañon-Nava. Lopez-Campos, 2026 WL 1283891, at *3-6 (ruling that the statute's text, "[c]ontextual and structural considerations," and "the government's previously unbroken 29-year streak of applying

7

§ 1226(a) as opposed to § 1225(b)(2)(A) to noncitizens" who have been present in the United States for years, all support finding that "an 'applicant for admission' is not necessarily 'seeking admission'"); Castañon-Nava, 2026 WL 1223250, at *22 (7th Cir. May 5, 2026) (Lee, J.) (ruling that "the text, statutory context, legislative history, and long-standing Executive practice all confirm that § 1225(b)(2)(A) applies to 'applicants for admission' who are *seeking* lawful entry at the border or ports of entry and not to noncitizens unlawfully living in the country's interior"); Barbosa da Cunha, 2026 WL 1146044, at *6-9 (ruling that the court's "commonsense reading of the text in Section 1225(b)(2)(A) squares with plain meaning of 'seeking admission' and gives effect to each clause and word that Congress chose to write," and "therefore applies only to (1) noncitizens who are present and have not been admitted, and (2) are requesting (3) lawful entry into the United States after inspection and authorization").

While none of these decisions are binding on this court, the undersigned is persuaded by the well-reasoned and thorough analysis in Hernandez Alvarez, Barbosa da Cunha, Lopez-Campos, and Judge Lee's individual opinion in Castañon-Nava, and is unpersuaded by the Fifth and Eighth Circuits' reasoning in Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026) and Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026).  Accordingly, absent any binding authority on the matter, the undersigned adopts and incorporates the analysis in Hernandez Alvarez, Barbosa da Cunha, Lopez-Campos, and Judge Lee's individual opinion in Castañon-Nava and similarly finds that (1) "applicant for admission" and "seeking admission" in 8 U.S.C. § 1225(b)(2) are not synonymous and (2) to fall within the scope of § 1225(b)(2), the noncitizen must be an "applicant for admission" (i.e. a noncitizen arriving in the United States or present in the United States without having been granted lawful entry), who is *seeking* lawful entry *into* the United States *after inspection and authorization*, and not clearly and beyond a doubt entitled to lawful entry.

Applying this construction of 8 U.S.C. § 1225(b)(2)(A) to the present case, the undersigned finds that although petitioner is an "applicant for admission" because he is present in the United States without having been granted lawful entry, at the time of his re-detention on March 17, 2026, he was not "seeking" lawful entry into the United States after inspection and

authorization, and therefore is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2).[3]

> 2. <u>Even if petitioner were subject to mandatory detention under 8 U.S.C. § 1225(b)(2)—which he is not—*Thuraissigiam* does not strip him of his due process rights.</u>

Respondents incorrectly characterize <u>Thuraissigiam</u> as meaning that petitioner has no due process rights beyond those afforded by statute. In <u>Thuraissigiam</u>, the United States Supreme Court held that a noncitizen who enters or attempts to enter the country illegally "has only those rights regarding *admission* that Congress has provided by statute." 591 U.S. at 140 (emphasis added). As this court has previously explained, <u>Thuraissigiam</u>'s holding is inapplicable in a § 2241 habeas petition because petitioner is not challenging his *admissibility* into this country, he is challenging the constitutionality of his *detention*. <u>Gholami v. Chestnut</u>, No. 1:25-cv-1644 DAD DMC, 2025 WL 3640675, at *2 n.5 (E.D. Cal. Dec. 16, 2025); <u>Kandola v. Warden of California City Det. Facility</u>, No. 1:26-cv-2714 DAD SCR, 2026 WL 1243464, at *2 n. 2 (E.D. Cal. May. 6, 2026) (second alteration in original) (emphasis added)) (<u>Thuraissigiam</u> is materially distinguishable because "[i]ts 'discussion of due process is necessarily constrained to challenges to *admissibility* to the United States,' and '[t]he Court answered no broader question'" (quoting <u>Padilla v. U.S. Immigr. & Customs Enf't</u>, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023)); <u>Gholami v. Chestnut</u>, No. 1:25-cv-1644 DAD DMC, 2025 WL 3640675, at *2 n.5 (E.D. Cal. Dec. 16, 2025).

<u>Thuraissigiam</u> is also materially distinguishable because petitioner was permitted to pass

---

[3] In <u>Ortega Cervantes v. Gonzalez</u>, 501 F.3d 1111, 1112, 1115 (9th Cir. 2007), the Ninth Circuit found the release on recognizance refers to "conditional parole" under § 1226(a). Courts dealing with similar facts, including this court, have concluded that when a noncitizen is released under 8 U.S.C. § 1226(a), that section, not § 1225(b)(2), governs the noncitizen's detention. <u>Sharma</u>, 2026 WL 1162718, at *3; <u>Amaya-Quinteros v. Corecivic, Inc.</u>, No. 1:25-cv-1672 AC, 2025 WL 3687642, at 10 (E.D. Cal. Dec. 19, 2025) (collecting cases); <u>Orejuela Gutierrez v. Chestnut</u>, No. 1:25-cv-1515 DAD AC, 2025 WL 3514495, at *5 (E.D. Cal. Dec. 8, 2025) (alteration in original) ("[A]s numerous courts have observed, the initial decision to pursue petitioner's detention under § 1226(a) precludes the government from later 'switch[ing] tracks' to subject him to mandatory detention under § 1225(b)(2)." (quoting <u>Salcedo Aceros v. Kaiser</u>, No. 25-cv-06924 EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025))). Accordingly, even if at one point petitioner was detained under 8 U.S.C. § 1225(b), because he was subsequently released on recognizance, his detention is now governed by 8 U.S.C. § 1226(a).

through our gates and is a person who has been living within the United States for years and as such entitled to Due Process under Zadvydas v. Davis, 533 U.S. 678, 687 (2001).  See Barbosa da Cunha, 2026 WL 1146044, at *15 ("While the doctrine may extend further than the twenty-five yards and twenty-four hours at issue in Thuraissigiam, . . . no one could seriously contend that it applies to a noncitizen like Petitioner who has been living in the United States for decades."); Lopez-Campos, 2026 WL 1283891, at *12 (quoting Mezei, 345 U.S. at 212) ("The government stretches the Supreme Court's holdings in Thuraissigiam . . . beyond [it's] logical breaking points . . . Thuraissigiam merely reinforces our longstanding understanding that noncitizens 'on the threshold of initial entry stand[] on a different footing' than those who have 'passed through our gates.' It does not control where, like in the instant case, noncitizens have resided within the United States for years."); Kandola, 2026 WL 1243464, at *2 n.2 (Thuraissigiam is materially distinguishable because "Thuraissigiam concerned an individual arrested mere yards from the border a short time after entering the United States without inspection, and who DHS had never released into the United States, not an individual like petitioner who has established meaningful ties to the United States"); Guaman Carlozama v. Warden of the California City ICE Det. Facility, No. 1:26-cv-1702 TLN CKD, 2026 WL 1042586, at *2 (E.D. Cal. Apr. 17, 2026) (quoting Mezei, 345 U.S. at 212) ("While petitioner still may be an 'applicant for admission' as that term is defined in 8 U.S.C. § 1225(b), he has also been allowed to 'pass[ed] through our gates,' and is a person within the border of the United States entitled to Due Process under Zadvydas.").

Accordingly, petitioner, who was detained and released and has resided in the United States for the past four years, has constitutionally protected due process rights regarding his detention.

       3.   Petitioner's conditional release created a liberty interest in remaining out of custody.

Respondents third argument—that petitioner is an "arriving alien" who does not have a liberty interest in his conditional release because his due process rights are limited to those provided by statute—also fails.

Although the INA does not define "arriving alien," the INA's implementing regulations do. In pertinent part, "arriving alien" is "an applicant for admission *coming or attempting to come into the United States at a port-of-entry*, or [a noncitizen] *seeking transit through the United States at a port-of-entry*, or [a noncitizen] interdicted in international or United States waters and brought into the United States by any means." 8 C.F.R. § 1.2. Although petitioner was an "applicant for admission" at the time of his immigration arrest and detention on March 17, 2026, he was not "coming or attempting to come into" or "seeking transit through the United States at a port of entry." He was also not interdicted and brought into the United States. Accordingly, he is not an "arriving alien."

To the extent respondents' assert petitioner is an "arriving alien" for the court to find petitioner as an "applicant for admission," such argument is unnecessary. As discussed in Section C.1, petitioner is an "applicant for admission" because he is present in the United States without having been admitted, and despite being an "applicant for admission," he is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2) because he was not "seeking admission" into the United States at the time of his re-detention.

To the extent respondents assert petitioner is an "arriving alien" to limit his due process rights to those articulated in Thuraissigiam, that argument has already been rejected in Section C.2. Noncitizens, like petitioner, who, at the time of their immigration arrest, have been living in the United States for years without having been admitted, have constitutionally protected due process rights.

Lastly, the undersigned rejects respondents' argument that petitioner does not have a protected liberty interest in his conditional release and that his arrest and conviction make the revocation of his release constitutional, for the reasons discussed in Section B.

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition for a writ of habeas corpus (ECF No. 1) be GRANTED on the due process claim based on revocation of release.

////

11

2. Respondents be ORDERED to:

    a. IMMEDIATELY RELEASE petitioner from custody under the terms of supervision in place at the time of his detention.

    b. RETURN all of petitioner's documents and possession upon his release from custody.

    c. FILE a notice of compliance within three (3) days of any order adopting these findings and recommendations, confirming petitioner's release from custody and the return of his documents and possessions.

3. Respondents be PERMANENTLY ENJOINED and RESTRAINED from:

    a. Imposing any additional restrictions on petitioner unless it is determined to be necessary at a future pre-deprivation/custody hearing.

    b. Re-detaining petitioner unless they provide at least seven (7) days' written notice to petitioner and hold a pre-deprivation bond hearing before a neutral decision maker, at which hearing respondents will bear the burden of demonstrating that petitioner is a flight risk or danger to the community, and petitioner's eligibility for bond is considered.

4. The order enjoining respondents state that the order does not address the circumstances in which respondents may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

5. If petitioner's petition is granted and he is ordered released, petitioner's motion to appoint counsel (ECF No. 3) be DENIED as MOOT.

6. Judgement be entered in favor of the petitioner and the Clerk of the Court close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties

have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 13, 2026

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE